### STATE BAR OF OKLAHOMA et al. v. McGHEE et al.

No. 21206.   Opinion Filed April 21, 1931.

D. A. Richardson, P. C. Simons and George S. Ramsey, for plaintiffs in error.

D. H. Cotten, George T. Webster, and M. W. Hinch, for defendants in error.

KORNEGAY, J.  This is a petition in error brought by the Board of Governors of the State Bar of Oklahoma, and the State Bar of Oklahoma, from a decision of the district court of Ottawa county, the judge being the Honorable J. J. Smith. The matter comes here by transcript. The petition for the writ of prohibition is found beginning on page 4 of the case-made, and is as follows:

"Petition for Writ of Prohibition.

"Comes your petitioners, Q. P. McGhee and Frank R. Burns, and respectfully represent and show to the court:

"That your petitioners, and each of them, are regularly licensed and practicing attorneys at law in the Supreme Court and all inferior courts of the state of Oklahoma, and are residents of Miami, Ottawa county, Okla.

"Your petitioners further show that the Constitution of the state of Oklahoma has created three separate departments of state government, to wit, legislative, executive and judicial, and that sections 1 and 2 of article 7 of the Constitution of the state of Oklahoma, provide as follows:

"'Section 1. Courts of the State. The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law.'

"'Section 2. Jurisdiction of Supreme Court. The appellate jurisdiction of the Supreme Court shall be coextensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs, as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law. Each of the Justices shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and make such writs returnable before himself, or before the Supreme Court, or before any district court, or judge thereof. in the state.'

"That section 10 of article 7 of the Constitution of the state of Oklahoma relating to the jurisdiction of the district court provides as follows:

"'Jurisdiction of District Courts. The district courts shall have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this Constitution, or by law, conferred on some other court, and such appellate jurisdiction as may be provided in this Constitution, or by law. The district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and other writs, remedial or otherwise, necessary or proper to carry into effect their orders, judgments, or decrees. The district courts shall also have the power of naturalization in accordance with the laws of the United States.'

"Your petitioners further show to the court that the Twelfth (12) Legislature of the state of Oklahoma enacted a purported law, known as 'The State Bar Act,' effective June 22, 1929. Section 26 of said act provides as follows:

"'Sec. 26. Disbarment, etc. The board of governors shall have power, after a hearing, for any of the causes now existing in the laws of the state of Oklahoma, or hereafter prescribed by rules adopted in pursuance of this act, warranting disbarment or suspension, to disbar members or to discipline them by reproval, public or private, or by suspension from practice, and the board shall have power to pass upon all petitions for reinstatement. The Board of Governors shall keep a transcript of the evidence and proceedings in all matters involving disbarment or suspension and shall make findings of fact and a decision thereon. Upon the making of any decision to disbar or suspend any attorney from practice, the board shall immediately file a certified copy of said decision, together with said transcript and findings, with the Clerk of the Supreme Court. Any person so disbarred or suspended may, within 60 days after the filing of said certified copy of said decision, petition said Supreme Court to review said decision, or to reverse or modify the same, and, upon such review, the burden shall be upon the petitioner to show wherein such decision is erroneous or unlawful. When 60 days shall have elapsed after the filing of said certified copy, if no petition for review shall have been filed, the Supreme Court shall make its order, striking the name of such person from the roll of attorneys or suspending him for a period mentioned in said decision. If, upon review, the decision of said Board of Governors be affirmed, then said court shall forthwith make said order, striking the said name from the rolls or of suspension. The board shall have power to appoint one or more committees to take evidence and make findings on behalf of the board and forward the same to the board. The powers herein conferred are in addition to the powers to disbar or discipline members of the bar as now held and exercised by the courts.'

"All other sections and portions of said act are herein made a part of this petition by reference to the same as though fully set forth herein.

"Your petitioners further represent and show to the court, that by virtue of and pursuant to the provisions of the State Bar Act, an accusation has been filed against

them jointnly before the Board of Governors, of the State Bar of Oklahoma, entitled: In the Matter of Q. P. McGhee and Frank R. Burns, Attorneys at Law,' in a disbarment proceeding, which said accusation is in words and figures as follows, to wit:

" 'Accusation.

" 'The Board of Governors of the State of Oklahoma charges:

" 'That, on the 23rd day of October, A. D., 1927, Q. P. McGhee and Frank R. Burns, then and there being duly admitted to the practice of law in the state of Oklahoma, by the Supreme Court of said state, and on said date members of the bar of the state of Oklahoma, being now members of the State Bar of Oklahoma, were convicted in the district court of Craig county, state of Oklahoma, in a cause in said court pending, entitled State of Oklahoma v. Jeff D. Sexton, Q. P. McGhee and Frank R. Burns, of a felony under the laws of the state of Oklahoma, to wit, of harboring, aiding and assisting a person guilty of a felony;

" 'Thereby subjecting themselves to suspension or disbarment from the practice of law in the State of Oklahoma.

" 'Dated this 21st day of December, 1929.

" 'Board of Governors of the State Bar of Oklahoma.

" 'A. W. Rigsby, Its Examiner.'

" 'State of Oklahoma, County of Oklahoma, ss.

" 'A. W. Rigsby, being sworn, says that the facts set forth in the foregoing are true, except facts said to be on information, or belief, which facts affiant is informed are and verily believes to be true. A. W. Rigsby.

" 'Subscribed and sworn to before me this 23rd day of December, 1929.

" 'Earl Sadler, Notary Public.'

" 'My Commission Expires 2/20/33. (seal)

"Petitioners state that pursuant to said accusation citation was served upon the said Q. P. McGhee and Frank R. Burns, and that said matter is set for hearing at Miami, Okla., on the 24th day of January, 1930, before defendants: Edgar A. deMueles, Grover C. Spillers and Charles A. Dixon, members of the Board of Governors, setting as trial judges.

"Your petitioners further show to the court that all matters concerning the admission to practice law and disbarment of attorneys are inherent powers of the Supreme Court of the state of Oklahoma, and further show to the court that section 26 of the State Bar Act is null and void and unconstitutional for the reason that it is an encroachment and infringement upon the powers of the judicial branch of government of the state of Oklahoma, and for the further reason that said section of said act

attempts to delegate and vest judicial authority in the Board of Governors of the State Bar of Oklahoma, whose orders and judgments purport to possess the finality and effect of judicial orders and judgments, and therefore is a violation of the constitutional authority delegated to the Supreme Court of the state of Oklahoma, and the inherent powers of the Supreme Court of the state of Oklahoma, and violates section 1 of article 4 of the Constitution of Oklahoma.

"Your petitioners further show to the court that, unless a writ of prohibition issue against said defendants, your petitioners will be tried summarily and arbitrarily by the members of the Board of Governors of the State Bar of Oklahoma, or some of the members of said Board of Governors, at Miami, Okla., on January 24, 1930, and that said Board of Governors of the State Bar of Oklahoma are without jurisdiction to try and determine the matter pending before them against these petitioners, or to make any judicial order concerning said matter.

"Your petitioners further show and represent to the court that they have no adequate remedy at law by appeal or otherwise, for the reason that, in the event of an order of disbarment or suspension by the Board of Governors, your petitioners will be summarily and arbitrarily suspended and disbarred from the further practice of law during the pendency of an appeal to the Supreme Court of the state of Oklahoma, should an appeal be taken from the order of suspension or disbarment, which will cause irreparable damage and injury to these petitioners.

"Your petitioners further show to the court that the accusation against them is based upon a purported conviction of a felony in the district court of Craig county, Okla., and that your petitioners have appealed from the judgment and conviction in said cases, which said appeals are now pending in the Criminal Court of Appeals of the state of Oklahoma, and have not been judicially determined by said court, and that these petitioners do not stand convicted of a felony as alleged in said accusations until and unless the final determination of said matter by the Criminal Court of Appeals of the state of Oklahoma affirms said conviction, and in event of a reversal or acquittal of your petitioners by said Criminal Court of Appeals, your petitioners will not stand convicted of any charge whatsoever.

"Your petitioners further show to the court that said act of the Legislature, known as the State Bar Act, is not retroactive and confers no jurisdiction upon the Board of Governors of said State Bar to try and determine any complaints or accusations prior to June 22, 1929.

"Your petitioners further represent and show to the court that the statute of limitations has run against the charge alleged in

the accusation now pending before the Board of Governors.

"Your petitioners further show to the court that the provisions of said State Bar Act, and the actions of the Board of Governors of the State Bar of Oklahoma, constitute a violation of the due process and equal protection clauses of the Constitution of the United States of America, being the Fifth and Fourteenth Amendments thereto.

"That your petitioners and affiants make this affidavit for the purpose of securing a writ of prohibition to be issued out of this court and directed to the State Bar of Oklahoma, and the Board of Governors of the State of Oklahoma, and J. R. Keaton, Edgar A. DeMueles, Vern E. Thompson, Grover C. Spillers, Charles A. Dickson, Horace G. McKeever, Alger Melton, F. B. H. Spellman, J. H. Gordon, W. E. Utterback, C. Guy Cutlip, H. C. Potter, and Sam Massingale, defendants, commanding them and each of them to desist and refrain from further proceeding in said action.

"Wherefore, your petitioners pray that said writ of prohibition be issued to said defendants commanding them to desist and refrain from further proceedings in said matter.

"Q. P. McGhee
"F. R. Burns,
                                    "Petitioners."

This petition was verified and filed on the 24th day of January, 1930, in the district court of Ottawa county. At said time an alternative writ of prohibition was issued, which is as follows (omitting caption):

"Alternative Writ of Prohibition.

"Whereas, complaint by affidavit of petitioners, Q. P. McGhee and Frank R. Burns, has been duly filed and presented to the court, stating that you, the defendants, are about to try said petitioners upon an accusation laid before the Board of Governors of the State Bar of Oklahoma, which is set forth in full in the petition, all of which is alleged to be unconstitutional and a violation of the rights and privileges of the petitioners:

"This, therefore, is to command you and each of you to desist and refrain from any further proceedings in such matter until the hour of 9 a. m. on the 14th day of February, 1930, or until the further order of this court, and to then and there show cause, if any there be, why you and each of you should not be absolutely and permanently restrained from any further proceedings in such action, and then and there have this writ.

"Witness the hand and seal of this court on this the 24th day of January, 1930.

"Attest:                          J. J. Smith,
"Wayne Anderson,           District Judge."
"Clerk of the District Court.

To this petition the State Bar of Oklahoma and the Board of Governors filed a demurrer, which is as follows (omitting caption):

"Demurrer to Petition.

"Come now the defendants in the above-entitled and numbered action, and demur to the plaintiffs' petition for a writ of prohibition herein, and for cause thereof say:

"1. This court is without jurisdiction to issue a writ of prohibition against the defendants in this action.

"2. Plaintiffs' petition does not state facts sufficient in law or in equity to entitle them to the issuance of a writ of prohibition.

"Wherefore, these defendants respectfully pray that this, their demurrer, be sustained, and that this court will make and enter its appropriate order to that effect.

"George S. Ramsey,
"P. C. Simons,
"D. A. Richardson,
            "Attorneys for Defendants."

The court made a ruling on the demurrer and reduced its conclusions of law, arising thereon, to writing. From this, the salient points in the decision are that the plaintiffs below attacked the State Bar Act (Laws 1929, c. 264) as being unconstitutional, and denied the authority of the Board of Governors to proceed against the petitioners. The court below holds that prohibition will lie in the case, and that the district court had jurisdiction to award relief to the petitioners. It, in the written opinion, quotes section 1 of article 4 of the Constitution, in connection with sections 24 and 25 of the State Bar Act, and announces that rules had been promulgated under date of November 18, 1929, and that under the causes for disbarment, set out therein, the respondents were seeking to proceed. The court also quotes section 1 of article 5 of the Constitution, and also quotes at length from the decisions of this court in Re County Commissioners, 22 Okla. 435, 98 Pac. 557. It deduces from the opinion and other matters that the idea of keeping separate and apart each distinct branch of state government is strongly embedded in the decision of this court.

The court proceeds to find that the Legislature has attempted to delegate to the State Bar the right to make laws which the Legislature alone were empowered to make, with the express reservation of the referendum thereon, and the language of the court, at page 32, is as follows:

"The act of the Legislature being considered attempts to create a court or tribunal, call it what you may, wherein rights

may be adjudicated, justice administered, and issues determined, and not only has the Legislature said, 'Organize your body, formulate your plans and methods of procedure,' but it has attempted to delegate to such tribunal the sacred rights of the people to formulate and make their own laws, which the people have seen fit to grant only to the Legislature, and then only with the express reservation that the people withhold to themselves the privilege of rejecting at the polls, any and all legislative acts. Surely this attempt to delegate legislative power is too patent to admit of argument inasmuch as the Legislature has, in effect, said to such court or board: 'Prescribe by law the qualifications of those who seek admission to the bar, examine them with a view to ascertaining their qualifications, set any standard you desire, and change it at will, convene as a law-making body, and write into the laws of the land such provision as you deem expedient concerning the admission of lawyers to the bar as well as causes for revoking their licenses; when charges are preferred adjourn as a legislative body, reconvene as a court and give the man a fair and impartial trial. When you have reached a decision, execute your orders.'"

The court then quotes from Montesquieu, and the further opinion of the court we quote verbatim, beginning on page 33 of the record, as follows:

"The wisdom of this declaration is as fundamentally sound today as when uttered, and will be so long as the weaknesses of human kind exist.

"As to do what it has so patently sought to do, the Legislature might as well say to the trial courts of this state: 'Meet as a body, determine for yourselves what should be punishable as a public offense, write your conclusions as part of the law of the state, return to your respective judicial positions, and, as courts, fairly and impartially administer that law—legislate today, adjudicate tomorrow and execute when you get around to it.'

"This court holds that the matter of defining qualifications of those who seek to practice law in this state is a matter of legislative cognizance, and that the causes for disbarment of attorneys in Oklahoma is a proper subject of legislation.

"This court holds that the Legislature cannot delegate to any court, tribunal, commission or body, the authority vested in it by the Constitution of the state of Oklahoma.

"This court holds that the Legislature has attempted to delegate to the State Bar the right and authority to enact laws of the land, and to do that which only the Legislature itself can do, and that which the people expressly reserve to themselves the right to do.

"This court holds that the so-called State Bar is without constitutional or statutory authority to declare, provide for, determine or promulgate qualifications for admission to the Bar of Oklahoma, and was without right or authority to prescribe or enact causes for disbarment of attorneys in the state of Oklahoma, and this court holds that the so-called causes for disbarment, suspension, or other disciplinary actions announced and published by the said State Bar, are a nullity, void, and unenforceable by that or by any other tribunal.

"This court holds that the Legislature of this state may create a court, tribunal, or commission, wherein attorneys may be tried upon charges brought against them under the law, and that such tribunal may be authorized to adopt and provide for such rules of procedure as it seems fit, but that it is without authority to enact laws.

"This court holds that, under the State Bar Act in question, causes and grounds for disbarment of attorneys theretofore existing under the statutory laws of this state were expressly repealed, and there exists today no express causes in the state of Oklahoma for suspension from practice of a lawyer, or for his disbarment, and unless the Supreme Court of this state declares and holds that the Supreme Court has the inherent power to suspend and disbar, there is no authority for the suspension or disbarment of a lawyer in the state of Oklahoma.

"This court cannot agree with the contention made that the newly created 'State Bar' is merely a branch or arm of the Supreme Court, and that its acts are only the acts of the Supreme Court, but is of opinion that the legislative intent was to create a board or tribunal, inferior to the Supreme Court, for a specific and defined purpose, with provisions for a review of its findings and decisions by the Supreme Court in the same manner, although under different rules of procedure, prescribed for the review of judgments and decisions of all the inferior courts of the state. And the court so holds.

"In this case, it being admitted in the pleadings that from the judgment of the district court in and for Craig county, Okla., wherein the petitioners or plaintiffs were adjudged guilty of a felony, an appeal is now pending in the Criminal Court of Appeals of the state of Oklahoma, and that said last named court has not decided such case, nor determined the guilt or innocence of the petitioners herein, this court holds that within the purview and meaning of either the law, as found in the statutes existing prior to the enactment of the so-called State Bar Act, nor within the meaning of the State Bar Act itself, were either in force and effect at this time—have such petitioners been determined guilty of a felony, but that only upon the affirmance of such case now pending on appeal could it be so declared. (State ex rel. v. Sale (Mo.) 87

S. W. 967—McAlester v. State, 16 Okla. Cr. 70) 180 Pac. 718.

"It is the further opinion of this court that the so-called State Bar is such a court or body, inferior to the district court of this state, as may be restrained under section 10, art. 7 of the Constitution of the state, and prohibited from exercising powers and authority not given it by law, and in the instant case it, the said State Bar, is attempting so to do.

"Because of the assigned reasons, and without going into other matters raised, this court is of the opinion that the demurrer interposed by the defendants should be overruled.

"Such is the holding, order, and judgment of this court.

"J. J. Smith, Judge."

A journal entry was made reciting the action of the court, and overruling the demurrer of the State Bar, and the Board of Governors, and they elected to stand upon the demurrer, and the temporary writ of prohibition was made perpetual, and the respondents were permanently prohibited "from further proceeding against the plaintiffs herein, upon the accusation heretofore filed against them or under the Act of the Legislature approved June 22, 1929, known as the State Bar Act, looking to the disbarment, suspension, or discipline of plaintiffs or either of them as attorneys at law."

Objections were taken to the order and notice of appeal to this court was given, and the matter before us for consideration is whether or not the court below was justified in issuing the writ of prohibition.

Elaborate briefs have been filed in this case by the State Bar, and the Governors thereof, and also by the defendants in error. The original brief of plaintiffs in error was filed on the 13th of June, 1930, the brief of the defendants in error on the 9th of June, 1930, and later a reply brief was filed by the plaintiffs in error; the latter brief, however, being a brief that was filed in the companion case, No. 21983, A. W. Kelley v. State Bar of Oklahoma. In the briefs of the defendants in error attacks are made upon the statute as being unconstitutional. Such was the view of the lower court in this case.

We are asked to declare the statute unconstitutional, and that the State Bar is without authority to examine into the derelictions of members of the bar, and report the same to this court for appropriate action. This court, as its name implies, is the head of the judicial department of this state. Another department of state is the legislative, and the other department is the executive.

In practical operation, however, the line of division of duty cannot be exact. The duty of each shades into the duty of the others, and altogether the three divisions of government are but constituent parts of the whole.

The necessity for regulating the conduct of attorneys is apparent. It has been, throughout the ages, that the lawyers, in a large measure, shape the policies of the people. We ourselves are drawn from the ranks of the lawyers; the Legislature, that makes the laws, is composed in a great many cases of lawyers, and it is well that it should be, because on the action of the lawyer as a member of the community, and frequently of the Legislature, there depends the future welfare of the people and the shaping of policies that will result in material prosperity as well as moral growth of the people. It has ever been that the lawyer shaped the policies of the people, and there is nothing in sight that will change that, in all probability. Such being the case, the conduct of the lawyer should be a special object of consideration at the hands of each department of government.

The Constitution provides for numerous boards; in fact, it has created in express words a Corporation Commission, defined its functions, prescribed its duties, and a great many of its functions today will take in judicial action, and administrative action, and very frequently that which would be referred ordinarily to a Legislature.

In making the frame-work of government, the Constitution at the threshold in general terms provided for a division of power in section 1, art. 4, which is as follows:

"Sec. 1. Legislative, Executive and Judicial. The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and, except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

On the face of it, it appears that in making this distribution the makers of the Constitution were aware of the fact that no sharp line of distinction could be made, and that the provision on the subject was a general one. The negative side of it is as follows: "and neither shall exercise the powers properly belonging to either of the others."

The word "properly," being the adverb of the adjective "proper," is defined in Webster's Dictionary, as follows:

"Properly: (a.) Suitable; fitly; strictly;

rightly; correctly; as a word properly applied; a dress properly hung. (b.) Individually; after one's own manner. Obs. (c) Exceedingly; entirely; wholly."

The word "proper," as defined in its primary sense, in the 1st and 2nd parts, by the same authority, is as follows:

"Proper: 1. Belonging to one; one's own; individual. 2. Belonging to the natural or essential constitution; belonging exclusively to a species, or individual, or arising from the nature of one; peculiar; special; particular; as, every animal has his proper instincts and appetites."

Black's Law Dictionary, quoting from some of the cases, defines it as "that which is fit, suitable, adapted, and correct." It also defines it as "peculiar; naturally or essentially belonging to a person or thing; not common; appropriate; one's own."

We are not at liberty, in construing a constitutional provision, to disregard its language. The presumption is that the makers of the Constitution meant something when they put in the qualifying word "properly" before the word "belonging," and it means more than if the general language had been used prohibiting one department from exercising the powers belonging to either of the other departments. The makers of the Constitution recognized the difficulty in separating by hard and fast rule the functions of the three branches of government.

In defining the judicial power of the state, the Constitution provides for a court of last resort, which is this court. In distributing the powers of government, however, section 1 of art. 7, in a general way, defines it as follows:

"Sec. 1. Courts of the State. The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions, or boards, inferior to the Supreme Court, as may be established by law."

The words "as may be established by law" have reference to the action of the Legislature primarily; though it does not use the word "Legislature," it uses the word "law."

In defining the power of this court, the Constitution is as follows:

"Sec. 2. Jurisdiction of Supreme Court. The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs, as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law. Each of the Justices shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and make such writs returnable before himself, or before the Supreme Courts, or before any district court, or judge thereof, in the State."

Later in the Constitution, in prescribing the duties of the Legislature, in section 8 of this article, we find the following:

"Sec. 8. Jurisdiction of Supreme Court fixed by laws of Oklahoma. The appellate and the original jurisdiction of the Supreme Court shall be invoked in the manner now prescribed by the laws of the Territory of Oklahoma until the Legislature shall otherwise provide."

Section 10 defines the jurisdiction of district courts, and it is as follows:

"Sec. 10. Jurisdiction of District Courts. The district courts shall have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this Constitution, or by law, conferred on some other court, and such appellate jurisdiction as may be provided in this Constitution, or by law. The district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and other writs, remedial or otherwise, necessary or proper to carry into effect their orders, judgments, or decrees. The district courts shall also have the power of naturalization in accordance with the laws of the United States."

Further illustrating the idea of commission government, and board government, arising from the complexity of modern society, the Constitution required the Legislature to provide for certain boards. In section 5 of art. 13, a Board of Education was provided for, leaving it to the Legislature, however, to work out the details, and in article 14 a Bank Commissioner was provided for, with sufficient power and authority to regulate and control all state banks, loan, and guaranty companies under laws which shall provide for the protection of the depositors and individual stockholders.

An oath of office was provided in article 15, which is as follows:

"I, . . . . . . . . . ., do solemnly swear (or

affirm) that I will support, obey, and defend the Constitution of the United States, and the Constitution of the state of Oklahoma, and will discharge the duties of my office with fidelity; that I have not paid, or contributed, either directly or indirectly, any money or other valuable thing, to procure my nomination or election (or appointment) except for necessary and proper expenses expressly authorized by law; that I have not knowingly violated any election law of the state, or procured it to be done by others in my behalf; that I will not knowingly receive, directly or indirectly, any money or other valuable thing, for the performance or nonperformance of any act or duty pertaining to my office, other than the compensation allowed by law, and I further swear (or affirm) that I will not receive, use, or travel upon any free pass, or on free transportation during my term of office."

Section 1 of article 16 provides for the creation of a Department of Highways. Said section is as follows:

"Sec. 1. Department of Highways—Improvement Districts—Convict Labor. The Legislature is directed to establish a Department of Highways, and shall have the power to create improvement districts, and provide for building and maintaining public roads, and may provide for the utilization of convict and punitive labor thereon."

Local self-government is provided for in article 18, and special charters can be framed. Other special provisions can be found in the Constitution requiring the Legislature to establish certain boards.

Section 39 of article 5 is as follows:

"Sec. 39. Boards Created—Physicians, Dentists and Pharmacists. The Legislature shall create a Board of Health, Board of Dentistry, Board of Pharmacy, and Pure Food Commission, and prescribe the duties of each. All physicians, dentists, and pharmacists now legally registered and practicing in Oklahoma and Indian Territory shall be eligible to registration in the state of Oklahoma without examination or cost."

In defining the powers and duties of the Legislature, we find section 36 of art. 5, which is as follows:

"Sec. 36. To extend to all rightful subjects of legislation. The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same, or any other subject or subjects whatsoever."

An attorney has always been classed as an officer of the court. At the time when the Constitution was adopted there were in existence the laws of the territory of Okla-

homa on the subject of attorneys at law, and they were made laws for the state of Oklahoma by the Enabling Act until altered either by the Constitution or by the Legislature. A form of oath for an attorney was prescribed, which has been carried forward into the Laws of 1921, and appears as section 4095. It is as follows:

"4095. Oath. Upon being permitted to practice as attorneys and counselors at law, they shall, in open court, take the following oath: You do solemnly swear that you will support, protect, and defend the Constitution of the United States, and the Constitution of the state of Oklahoma; that you will do no falsehood, or consent that any be done in court, and if you know of any you will give knowledge thereof to the judges of the court, or some one of them, that it may be reformed; you will not wittingly, willingly, or knowingly promote, sue, or procure to be sued, any false or unlawful suit, or give aid or consent to the same; you will delay no man for lucre or malice, but will act in the office of attorney in this court according to your best learning and discretion, with all good fidelity as well to the court as to your client, so help you God."

In the instant case, the attack made upon the provision of the Bar Act seems to be largely upon sections 24, 25, 26, and 27 of the act, and incidentally section 33, which are as follows:

"Qualifications for Admission to Practice Law.

"Sec. 24. With the approval of the Supreme Court, and subject to the provisions of this act, the board shall have power to fix and determine the qualifications for admission to practice law in this state, and to constitute and appoint a committee of not more than seven members with power to examine applicants and recommend to the Supreme Court for admission to practice law those who fulfill the requirements, and no person shall be admitted to practice without such recommendation. With the approval of the Supreme Court, the board shall have power to fix and collect fees to be paid by applicants for admission to practice, which fees shall be paid to the State Treasurer; provided, however, that until otherwise fixed and determined, the requirements for admission to practice under this act shall be the same as those now prescribed by statute and the Supreme Court for admission to practice in this state, and shall be enforced as the same now are enforced through the State Board of Bar Examiners."

"Rules of Professional Conduct.

"Sec. 25. With the approval of the Supreme Court, the Board of Governors shall formulate and enforce rules of professional conduct for all members of the bar in the

state; and shall by rule prescribe the causes for suspension of license to practice, for disbarment, and for such other disciplinary measures as it may deem proper; provided, that until otherwise fixed and determined by the Board of Governors, the causes for suspension and disbarment, and the imposition of disciplinary measures, and the procedure in respect thereto, shall be as now prescribed by the statutes of this state and the rules of the Supreme Court."

"Power to Disbar or Suspend Members— Reinstatement.

"Sec. 26. The Board of Governors shall have power, after a hearing for any of the causes now existing in the laws of the state of Oklahoma, or hereafter prescribed by rules adopted in pursuance of this act, warranting disbarmen, or suspension, to disbar members or to discipline them by reproval, public or private, or by suspension from practice, and the board shall have power to pass upon all petitions for reinstatement. The Board of Governors shall keep a transcript of the evidence and proceedings in all matters involving disbarment or suspension, and shall make findings of fact and a decision thereon. Upon the making of any decision to disbar or suspend any attorney from practice, the board shall immediately file a certified copy of said decision, together with said transcript and findings, with the Clerk of the Supreme Court. Any person so disbarred or suspended may, within 60 days after the filing of said certified copy of said decision, petition said Supreme Court to review said decision, or to reverse or modify the same, and, upon such review, the burden shall be upon the petitioner to show wherein such decision is erroneous or unlawful. When 60 days shall have elapsed after the filing of said certified copy, if no petition for review shall have been filed, the Supreme Court shall make its order, striking the name of such person from the roll of attorneys, or suspending him for the period mentioned in said decision. If, upon review, the decision of said Board of Governors be affirmed, then said court shall forthwith make said order striking said name from the rolls or of suspension. The board shall have power to appoint one or more committees to take evidence and make findings on behalf of the board and forward the same to the board with a recommendation for action by the board. The powers herein conferred are in addition to the powers to disbar or discipline members of the bar as now held and exercised by the courts."

"Rules and Regulations to carry out this Act.

"Sec. 27. Subject to the laws of this state, the board shall have power to formulate and declare rules and regulations necessary or expedient for the carrying out of this act, and shall by rule fix the times and places of the annual meetings of the State Bar, the manner of calling special meetings thereof and determining what number shall constitute a quorum of the State Bar."

"Hearings on Disbarment Proceedings.

'Sec. 33. In all cases involving disbarment, suspension, or reproval, the hearing shall be held in the county of the residence of the party charged, or where the offense is committed. The board, or any administrative committee, shall, of its own motion, and without the filing or presentation of any complaint, or upon any complaint, if a complaint be filed, have power to initiate and conduct investigations of all matters affecting or relating to the State Bar, or its affairs, or the practice of law, or the discipline of the members of the State Bar, or any other matter within the jurisdiction of the State Bar, and in the conduct of such investigations shall have power to take and hear evidence touching the matters under investigation, administer oaths and affirmations, and upon such investigations, and upon trial or hearing of all matters, jurisdiction to try or hear which is given the said board or committee, shall have power to compel the attendance of witnesses and the production of books, papers, and documents pertaining to the matter under investigation, or to said trial or hearing, by subpoena issued as hereinafter provided. Whenever any persons subpoenaed to appear and give testimony or to produce such books, papers, or documents as required by such subpoena, shall refuse to appear or testify before said board or committee, or to answer any pertinent or proper questions, he shall be deemed in contempt of said board or committee, and it shall be the duty of the chairman or presiding officer of said board or committee to report the fact to the district court of the state of Oklahoma in and for the county in which said investigation, trial, or hearing is being held; thereupon, the said court shall issue an attachment in the form usual in said district court. * * * On the return of said attachment, and the production of the person attached, the said district court shall have jurisdiction of the matter, and the person charged may purge himself of the contempt in the same way, and the same proceeding shall be had, and the same penalties may be imposed, and the same punishment inflicted as in the case of a witness subpoenaed to appear and give evidence on the trial of a civil cause before a district court of the state of Oklahoma. Any member of the said board shall have power to administer oaths and issue any subpoena herein provided for. No witness shall be compelled to attend a hearing outside of the county where such hearing is held. Depositions may be taken and used in the same manner as in civil cases provided for."

Instead of applying to the district court, and getting from it an attachment proceeding to compel the attendance of someone to help along with the investigation, the Bar

Commission was met with an alternative writ of prohibition, prohibiting it from proceeding, which was later made complete.

Section 37 of the act provides for a review by this court of the action of the Board of Governors. Under section 24, it was left to this court in a large measure to fix and determine the qualifications for admission to practice law in the state, the Board of Governors being permitted to make the proposal, but the vitalizing of it rests with this court. The other provision contained in this section provides that until otherwise fixed and determined in the manner provided, the requirements permitting practice already prescribed by statute and the Supreme Court shall be enforced as the same now are enforced through the State Board of Bar Examiners. As this is not a case of admission to practice, it is not necessary to further consider this. Suffi e it to say, however, that the practice has heretofore been to allow the Supreme Court to prescribe the rules, in a large measure, for admission for persons to the bar, there being also some legislative directions on the subject. This is practically conceded in the briefs of both sides.

It is not necessary to decide as to whether or not, under the implied power of this court, which must exist for its very existence, it can prescribe rules and regulations that would be different from those prescribed by the legislative branch of the government, as the Legislature in passing the Bar Act was merely aiding this court in its efforts to secure purity in the practices of those who appear before it.

In this particular case, an attack is made on section 25, which empowers the Board of Governors, with the approval of this court, to enforce rules of professional conduct for members of the bar in this state, and also prescribe by rules causes for suspension of license to practice, for disbarment and for such other disciplinary measures as it may deem proper, with a proviso that until otherwise fixed and determined by the Board of Governors, the causes for suspension and disbarment, and the imposition of disciplinary measures, and the procedure in respect thereto, shall be as now prescribed by the statutes of this state and the rules of the Supreme Court. It will thus appear that by the express language of the Legislature, there is no hiatus in the repeal of the one rule and of the substitution of the other.

In the event we should declare that the Board of Governors, with the approval of this court, would not have, under the Constitution, power to make these rules, and

the Legislature could not consent to the exercise, by this court, of the power that necessarily must exist in this court, by a positive declaration to that effect, immediately the old statute law becomes operative, and there are rules that would prevent lawyers from carrying on nefarious practices, and prohibit them from further appearing before the courts for that purpose. We take it, therefore, that it would be useless in this particular case to undertake to define the exact powers of the Board of Governors, and of this court, to prescribe rules for the protection of itself and the public from the machinations of those who have been admitted to practice and have forgotten their own official oaths.

Section 26 is also attacked in this connection because it empowers the Board of Governors to have a hearing upon the question as to whether a member of the bar should be disciplined, reproved, suspended or disbarred, and empowers the board to pass upon all petitions for reinstatement. No reason is perceived, under a Constitution worded as ours, conferring upon such commissions and boards as may be established by law judicial power, why the Legislature, in its plenary power and in carrying out the police power of this state, could not create such a board, especially as there is a provision for immediate supervision by this court, and this court is empowered to investigate the complaint and find out whether an officer of this court should be debarred from further abuse of the confidence of the people under the guise of being one of its officers.

No special attack is made in this proceeding upon the provision empowering the Board of Governors to appoint a commission to take evidence and make finding on behalf of the board and forward the same to the board with recommendations for action by the Board.

As evidence of the fact that the Legislature was endeavoring to aid this court in a most laudable manner, that is, to prevent dishonest practice being carried on by those claiming to be its officers, the Legislature has expressly stated in this section:

"The powers herein conferred are in addition to the powers to disbar or discipline members of the bar as now held and exercised by the courts."

Section 27, providing that, subject to the laws of the state, the board shall have power to formulate and declare rules and regulations necessary or expedient for the carrying out of the act, in no wise conflicts with the Constitution. The Constitution most clearly recognizes in the case of the Corporation

Commission, and the powers conferred, the necessity, in the modern complex of society, of carrying on a great many things by agents, who exercise, in the course of administration, legislative, judicial, and executive functions. By reason of the relations of life becoming more varied, boards with rate-making power, and power to make rules, have grown up both under the federal system and under the various state governments.

Section 33 is the one requiring that hearings before the Board of Governors with reference to disbarment, suspension, or reinstatement shall be had in the county of the residence of the party charged or where the offense was committed. This confers upon the board the power to initiate and conduct investigations of all matters affecting or relating to the State Bar, or its affairs, or the practice of the law, or the discipline of the members of the State Bar, or any other matter within the jurisdiction of the State Bar, and it empowers the board, in the conduct of such investigations, to take and hear evidence and to make findings. Complaint is made that this is unconstitutional, as it allows the board to be the prosecutor and at the same time it allows the board to make findings to the detriment of the officers of this court. However, it is all subject to the approval of this court, and if this court cannot trust itself to be fair under those conditions, by what manner of reasoning can we expect any other tribunal to be fair? In contempt of our own authority, we have claimed the inherent power to sit as Justices where our own dignity has been offended, and we still maintain that right as being a part of our constitutional duty.

In the present case, the Board of Governors are under an oath to be fair and to be impartial; in fact, their oaths as lawyers would require them to do that, though there would be no doubt but that if a member of the Board of Governors had been hurt personally by the action complained of, so that his passion would be aroused, on application to this court, he would be disqualified to even take the testimony.

The Legislature has seen fit to pass the measure known as the Bar Act to relieve this court of an unnecessary burden, feeling that its time could better be taken up with something else, and also to put another body to work, so that in the event unfit persons were admitted to the practice, the responsibility therefor would rest upon a board that had time, and full opportunity, to investigate instead of leaving it to an overworked Supreme Court asking for help to enable it to perform the functions for which it was primarily created. That the Legislature has the power to create a board with more varied powers than this, regardless of the constitutional provisions, was declared by this court in the Industrial Commission cases, and was practically declared by this court in the case of Noble State Bank v. Haskell, 22 Okla. 48, 97 Pac. 590, which went to the Supreme Court of the United States, and as to the board's powers in the present case, there can be little doubt, unless the doctrine announced by the Supreme Court of the United States in the last-mentioned case is an untrue one.

It is needless to carry on a discussion as to the necessity of regulating the conduct of attorneys. Our own experience tells us such. The Legislature has seen fit, in the exercise of its power, to create an arm of this court with the power so to do. Its action in the matter is attacked as being unconstitutional. Before we so declare, we must remember that each member of the Legislature and the Governor, who approved the act, were bound equally with ourselves by an oath to support the Constitution of this state. To declare that an act of the Legislature, apparently enacted for the purpose of bettering conditions, violates the Constitution, is a very delicate task. With reference to the lower court in this case, it should be a still more delicate task, especially when the declaration was made for the purpose of prohibiting an arm of this court from investigating the moral character of two of its officers and reporting to this court for proper action. Perhaps the lower court thought it was justified by decisions of this court holding that the writ of prohibition was a weapon that the lower court could use. However this may be, it would use upon an arm of this court a weapon that should have been left to this court.

There was ample remedy at the hands of the aggrieved parties by a simple application to this court to control the investigation. We do not think, in the future, that the district judges should take upon themselves the power to exercise prohibition with reference to matters that are properly before this court, and with reference to proceedings instituted by an officer of this court preparatory to making a report to it.

We do not think that the act is unconstitutional upon the points urged that are necessary to sustain the writ of prohibition. With reference to the proposition as to whether or not, pending a proceeding in a higher court for the reversal of a conviction in a district court, there would be no jurisdiction in this court to inquire into and make a proper order, this we do not care to discuss

at this time, as that is a matter for our own discretion, not that of the lower court.

As bearing upon the propriety of this action of the lower court in granting this writ of prohibition, we refer to our own decision of Kedney v. Hooker, 144 Okla. 148, 289 Pac. 1108, and of Lattimore v. Vernor, 142 Okla. 105, 288 Pac. 468. The matters involved in this discussion have practically been decided not to militate against the constitutionality of the act in the case of Interstate Commerce Commission v. Illinois Central Railway Co., 54 L. Ed. 280, decided by the Supreme Court of the United States, and of the Monogahela Bridge Co. v. United States, 54 L. Ed. 435, and Union Bridge Co. v. United States, 51 L. Ed. 523, decided February 25, 1907, and the first headnote of which is as follows:

"Constitutional Law—Delegation of Power.

"I.  Legislative and judicial powers are not unconstitutionally delegated to the Secretary of War by the provision of the river and harbor act of March 3, 1899 (30 Stat. at L. 1121, 1153, chapt. 425, U. S. Comp. Stat. 1901, p. 3545), sec. 18, empowering that official, when satisfied, after a hearing of the parties interested, that a bridge over a navigable water way of the United States is an unreasonable obstruction to navigation, to require such changes or alterations as will render navigation reasonably safe, easy, and unobstructed."

See, also, Noble State Bank v. Haskell, supra.

Besides these, on statutes very similar to these coming from state courts that are cited in the briefs, we find the following decisions: In re Bruen, 102 Wash. 472, 172 Pac. 1152, and cases cited therein, and In re Gill, 104 Wash. 160, 176 Pac. 11, and In re Scott (Nev.) 292 Pac. 291, decided by the Supreme Court of Nevada, as well as various California cases that are cited with reference to their state bar act, which in some respects is very similar to ours.

One of the strongest examples of an amalgamation of the various duties of making rules and deciding cases is shown in our Industrial Commission, arising out of the administration of Laborers' Compensation Laws. So far, none of its provisions with reference to the power of the Commission have been set aside as being unconstitutional.

The case is reversed, and the writ of prohibition is discharged at the costs of the defendants in error, and the Governors of the State Bar are directed to proceed to make all necessary inquiries as to the fitness of the defendants in error to be further considered as attorneys of this court and of the other courts of this state, and to report its findings to this court.

HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., and RILEY, J., concur in conclusion. CLARK, V. C. J., dissents.