[S. F. No. 1669. In Bank.—February 16, 1900.]

THE PEOPLE ex rel. W. N. MOORE, Appellant, v. E. W. KING, Respondent.

STATE HOSPITAL — INSANITY LAW — QUALIFICATIONS OF MEDICAL SUPERINTENDENT.—Under the "insanity law" of March 31, 1897, establishing a state lunacy commission for state hospitals, theretofore known as state insane asylums, the qualifications prescribed for the medical superintendent are imperative, and the board of managers of a state hospital cannot appoint a medical superintendent for the hospital, who has not had at least three years' experience in the care and treatment of the insane.

ID.—RIGHTS OF FORMER SUPERINTENDENT.—A new appointee, not possessing the qualifications prescribed by the law of 1897, cannot oust the former medical superintendent of the insane asylum, who has the requisite qualifications, though his term of office has expired, he being entitled to hold over as medical superintendent under the act of 1897 until a qualified successor takes his place.

ID.—INSANITY LAW CONSTITUTIONAL.—The insanity law is not special legislation, nor devoid of uniform operation, nor does it embrace subjects not expressed in its title; but it is in all of these respects valid and constitutional.

APPEAL from a judgment of the Superior Court of Mendocino County. Albert G. Burnett, Judge.

The facts are stated in the opinion of the court.

J. A. Cooper, and W. F. Fitzgerald, Attorney General, for Appellant.

Beverly L. Hodghead, and R. B. Carpenter, for Respondent.

McFARLAND, J.—This action is brought under section 803 et seq. of the Code of Civil Procedure in the name of the people on the relation of W. N. Moore, to determine the right to the office of medical superintendent of the Mendocino State Hospital. The court below entered judgment for defendant. Plaintiff appealed from the judgment, and the case is presented here on the judgment-roll and a bill of exceptions.

By an act of the legislature approved February 20, 1889 (Stats. 1889, p. 25), the "Mendocino State Insane Asylum" was established at Ukiah in Mendocino county. It was under the general management of a board of directors, consisting of five persons, appointed as provided in the act; and it was provided that the board "shall elect a medical superintendent, whose term of office shall be four years, and until his successor is elected and qualified, and henceforth the directors shall elect the medical superintendent when it becomes necessary by the expiration of his term of office or by the occurrence of a vacancy in said office." On the first day of April, 1893, the defendant King was regularly appointed to said office of medical superintendent for the term as prescribed in the act. The qualifications of superintendent under that act were that: "The medical superintendent shall be a well-educated and experienced physician and a regular graduate in medicine, and shall have practiced at least five years from the date of his diploma." Four years from the date of his appointment had expired on April 1, 1897, but he has since held the office upon the ground that no successor has been elected and qualified.

On March 31, 1897, an act was passed by the legislature entitled, "An act to establish a state lunacy commission," etc., which is called in the first section thereof the "insanity law," and which by its terms went into effect on said March 31, 1897. This act is claimed by respondent to be a revision of the entire law upon the subject of insane asylums, and, therefore, a repeal of all former laws upon that subject. It establishes certain institutions which are called "state hospitals" at the various places where institutions called "insane asylums" had been formerly established. Among others, it establishes "Mendocino State Hospital," near the city of Ukiah, county of Mendocino,

hitherto known as the "Mendocino State Insane Asylum at Ukiah." It provides for medical superintendents of these hospitals, and as to the qualifications of such superintendents its language is as follows: "A medical superintendent, who shall be a well-educated physician, a graduate of an incorporated medical college, of good moral character, and who has had not less than three years' experience in the care and treatment of the insane." It provides that each hospital shall be under the control of a board of five persons to be appointed by the governor, who are called "managers or trustees"; and the managers for the Mendocino State Hospital having been duly appointed by the governor, the board, in September, 1897, regularly appointed the appellant, W. N. Moore, medical superintendent of said hospital. He qualified by duly taking the official oath, and demanded possession of the office of the respondent King, who refused to deliver the same; and this action was then commenced. The court found that the appellant was not qualified for said office, because he "had not, nor had he at the time of the commencement of this action, had three years' experience, and has not had three years' experience in the care and treatment of the insane." This finding is supported by the evidence, and under the said statute of 1897 makes the appellant disqualified to hold said office. The only evidence upon this point consists of the testimony of the appellant himself. This testimony merely shows that for about a dozen years he had been a physician in general practice; that in the course of his practice he had been called upon to prescribe for a number of persons suffering under different kinds of mental disease, some of whom he says were insane; that he did not claim to be a specialist or expert in the treatment of mental diseases and that he knew no reason why persons suffering under such diseases should come to him rather than to any other general practitioner. Upon cross-examination he said: "I have no institution for the treatment of the insane myself, and have never been connected with any institution for the care or treatment of the insane. I had parties under my care just the same as other patients. I would visit them whenever I was called to do so, or whenever I thought professional calls were necessary. I attended them the same as I did persons suffering from other diseases. That is the

extent of the care I have given those persons. I mean by 'hygienic treatment,' the application of remedies suitable to the trouble. I don't know that my practice has been different from that of other general practitioners."

In view of the facts thus established, to hold that the relator has the statutory qualifications for the office of medical superintendent would be to wholly ignore the language of the insanity law. This language is made more emphatic and pointed by the fact that it creates a new qualification, and one additional to those prescribed by all former statutes for medical superintendents of insane asylums. The former qualifications were simply that the superintendent should be "a well-educated and experienced physician and a regular graduate of medicine, and shall have practiced at least five years from the date of his diploma"; and by no admissible construction can it be held that the legislature did not intend to add another and special qualification when it further provided that he must have had "not less than three years' experience in the care and treatment of the insane." This latter provision cannot be "explained away." If it could be construed to mean nothing more than former provisions on the subject, there would be no reason for its enactment, and it would have to be held that the legislature did an idle and meaningless thing. It is not necessary to determine whether or not the appointee must have been employed for three years in some asylum or institution, either public or private, used exclusively for the confinement and treatment of insane persons—although the use of the word "care" as well as treatment of the insane very strongly suggests that conclusion; but the qualification certainly does not include a mere general practitioner, like the relator, who, in the course of his practice, occasionally meets and prescribes for a person afflicted with some mental disease, and who is not and does not pretend to be a specialist in insanity cases, and who has not made the care and treatment of the insane a special study, nor followed it, for any length of time whatever, as a special vocation. The policy of the provision under consideration is entirely a matter for legislative determination.

As the respondent was entitled to hold the office until a qualified successor should be legally elected to take his place, there

was no ground for a judgment that he "wrongfully usurps, holds, occupies," etc., the said office; therefore there is no error in any part of the judgment rendered by the court below.

Respondent contends that the managers of the hospital had no power to legally elect the appellant, even if he had been qualified to hold the office. The insanity law nowhere expressly provides that the managers may appoint a successor to a medical superintendent after his term of four years has expired, and, indeed, it does not provide for any term of office of the superintendent whatever; it merely provides that they may appoint a medical superintendent, and certain other named officers, "as often as vacancies occur therein." Respondent contends that the insanity law was intended to be and is a revision of the whole subject of the management of the insane, and that it therefore takes the place of all former laws upon the subject and repeals all such laws; that under judicial decisions a vacancy in an office does not occur when there is a person in the office presently entitled to hold the same, and occurs only when by death, or resignation, or removal, etc., the office is entirely unoccupied; and that, as the managers are given no power to appoint a successor, there is no vacancy which they are entitled to fill. This contention has certainly great plausibility, for the insanity law with respect to this matter is certainly very loose and indefinite; but we are not called upon in this case to pass upon the merits of the contention, and it is to be hoped that the legislature will amend the law so as to clear up these difficulties, and thus make a judicial determination of the questions thus raised unnecessary.

With respect to the contention of appellant that the insanity law is unconstitutional, first, because it is special legislation and does not have a uniform operation, and, second, that it embraces subjects not expressed in its title, it is sufficient to say that the contention is not maintainable upon either of the grounds specified.

The judgment appealed from is affirmed.

Harrison, J., Garoutte, J., Van Dyke, J., Temple, J., and Henshaw, J., concurred.