[S. F. No. 4566.   Department Two.—June 4, 1908.]

## NAPA STATE HOSPITAL, by C. B. SEALEY, Treasurer, Respondent, v. EMANUELLO DASSO, an Insane Person, Appellant.

INSANE PERSONS—LIABILITY FOR CARE IN STATE HOSPITAL.—An action may be maintained by a state hospital by its treasurer, against an insane person confined therein under a regular order of commitment, who owns property, to recover judgment for his care, support, and maintenance, under the act of the legislature, known as the "Insanity Law," approved March 31, 1897.

ID.—EVIDENCE—REGULARITY OF COMMITMENT—COLLATERAL ATTACK—PRELIMINARY STEPS—PRESUMPTION.—Upon a collateral attack upon the order of commitment, in such action, made many years subsequent to the order, which shows upon its face that the examination was had while the insane person was before the judge at the hearing, it is unnecessary to prove the requisite preliminary steps, but it will be presumed in the absence of contrary proof, that such steps were regularly had.

ID.—NAME OF PERSON COMMITTED AND PERSON SUED—PRESUMED IDENTITY—DIFFERENCE IN SPELLING—IDEM SONANS.—Where the commitment was of "Emanuel Tasso," and the person sued was "Emanuello Dasso," and it appears that the difference in the given name was merely the difference between the English and Italian method of spelling, the court properly treated the surnames as *idem sonans*.

ID.—ACTION BROUGHT UNDER ACT OF 1897 UNAFFECTED BY REPEAL.—Where the action was brought under the act of 1897 it was unaffected by the repeal of that act pending suit, there being an express reservation of pending actions previously commenced, which must be prosecuted to final determination in the manner and form in which it was brought.

ID.—CONSTITUTIONAL LAW—SPECIAL LEGISLATION AS TO PRIVATE CORPORATIONS—PUBLIC CORPORATIONS UNAFFECTED.—The provisions of the constitution forbidding the organization of private corporations by special legislation are inapplicable to the formation of public corporations organized for governmental purposes, and which are state agencies, subject to the control and government of the state.

ID.—CONSTITUTIONALITY OF INSANITY ACT.—The Insanity Act of 1897 is constitutional and valid. The right conferred therein upon state hospitals to recover for the care and maintenance of insane persons confined therein, is not special or class legislation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   James M. Seawell, Judge.

The facts are stated in the opinion of the court.

James A. Devoto, and Devoto & Richardson, for Appellant.

U. S. Webb, Attorney-General, and John W. Stetson, for Respondent.

LORIGAN, J. This action was brought to recover a specified sum for the care, support, and maintenance of Emannello Dasso alleged to be confined in the Napa State Hospital as an insane person by virtue of an order of commitment duly made and given by the superior court of the city and county of San Francisco after proceedings regularly had, and is maintained by plaintiff under the act of the legislature known as the "Insanity Law," approved March 31, 1897. (Stats. 1897, p. 311.)

A judgment was rendered for plaintiff and this appeal is taken by defendant from an order denying his motion for a new trial.

It is first insisted that the court erred in the admission of evidence.

On the trial plaintiff offered, and the court admitted in evidence over the objection of defendant, an order of commitment dated February 2, 1897, made by one of the judges of the superior court in and for the city and county of San Francisco, reciting that *Emanuel Tasso* had been personally brought before said judge for examination on a charge of insanity, and that upon examination of the witnesses called, and after a personal examination, was found to be insane by said judge, and by him ordered committed to the insane asylum at Napa.

It is asserted that the court erred in overruling the objection of the appellant that no proper foundation had been laid by respondent for the admission of the order.

While it is claimed by appellant that proceedings in matters of insanity were at the date of the commitment here in question required to be had under section 2168 of the Political Code, and by the respondent that they were to be had under section 17 of an act providing for the management of the Napa State Asylum for the Insane (Stats. 1875-76, p. 137), it is not questioned by appellant but that under either provision of the law (and they are substantially the same)

the judge of the superior court had power and jurisdiction to order the commitment of insane persons to the Napa asylum. The point made is that plaintiff should have offered in evidence the affidavit charging insanity, the warrant of arrest, the record of the examination and all the other preliminary proceedings required to be taken, and upon which the commitment was based, before the commitment itself was admissible in evidence.

We do not think this point well taken. It will be observed that this attack upon the order of commitment is a collateral one made many years subsequent to the making of the order. Under the law the judge was vested with power to make such commitments, and, hence, had jurisdiction of the subject-matter. The order shows that the examination which eventuated in the commitment here in question was had while *Tasso* was personally before the judge at the hearing. From the recitals it sufficiently appears, as against a collateral attack, that the court had jurisdiction of the alleged insane person, and in the absence of any showing to the contrary it will be presumed that the preliminary steps which the law required to be taken in order to warrant the adjudication of insanity were regularly had.

It is of no moment that the proceedings here in question were before a judge of the court acting by virtue of a special power conferred, and not a proceeding in court under the general jurisdiction of such tribunal. Power having been conferred upon the judge to hold such examination and determine the question of insanity and commit to an asylum, his orders made by virtue of such authority, and which from the recitals upon their face and the legal implications arising therefrom show jurisdiction, are no more subject to collateral attack than the orders of a superior court acting in a proceeding by virtue of special authority, which it must be conceded are not. (*Matter of the Application of Clary,* 149 Cal. 732, [87 Pac. 580].) To allow orders made by competent authority to be attacked collaterally at any time would be to defeat the object sought in conferring it and practically to ignore it. (Van Fleet on Collateral Attack, p. 902.)

The ruling of the court under the objection we are considering was therefore correct.

But it is further insisted that the order was inadmissible because it purported to be the commitment of one *Emanuel Tasso* to the asylum, and there was nothing in evidence to show that *Emanuel Tasso* and *Emanuello Dasso,* the defendant and appellant, were the same person. Of course, as far as the name *Emanuel* or *Emanuello* is concerned, no point is made, as the one is the English and the other the Italian method of spelling. The stress of the objection, however, is laid on the surname *Tasso* and *Dasso,* the claim of appellant being that each represents a separate and distinct family name pronounced entirely different. If this is true there was no evidence of it. The trial court undoubtedly considered the names *Tasso* and *Dasso* as *idem sonans.* Whether one name is *idem sonans* with another is a question of pronunciation, not of spelling. Strict accuracy in the spelling of names is not required in legal proceedings. Though a name be inaccurately written, still, if when pronounced it conveys to the ear a sound practically similar to the correct name when pronounced, the rule of *idem sonans* obtains and identity of person will be presumed from similarity of sound in the pronunciation of the names. The letter "T" is convertible with the letter "D," and is at most but a mute articulation (Webster's Dictionary, letters T and D), and these letters have by the courts been considered as interchangeable so as to apply to their use the doctrine of *idem sonans.* For example, "Hudson" for "Hutson" (*State* v. *Hutson,* 15 Mo. 512); "Witt" for "Wid" (*Veal* v. *State,* 116 Ga. 591, [42 S. E. 705]). As to the use of the letters "D" and "T" in the cases cited, it was held that the only difference between them was the very slight difference in the articulation of the letters and that *idem sonans* applied. It was, therefore, for the court to say after hearing the pronunciation of the name "Dasso" by the witnesses in the case, whether, though incorrectly spelled "Tasso" in the order of commitment, it conveyed to the ear when pronounced practically the same sound as would be conveyed by the pronunciation of the name if correctly written "Dasso." It undoubtedly concluded that it did, and under the cases cited was warranted in doing so.

These are the only points made by the rulings of the court in the admission of evidence.

At the conclusion of respondent's case the appellant moved for a nonsuit, among other grounds insisting that the plaintiff had no legal capacity to maintain the action and that the act of March 31, 1897, under which it was brought was unconstitutional for various reasons. The nonsuit was denied and it is urged here that it should have been granted. We think not. The points that are made as to want of legal capacity in the plaintiff to maintain the action are, 1. That the action was commenced while the Insanity Law of March 31, 1897 (Stats. 1897, p. 311), was in force and under its provisions; that said act was repealed by the act of March 26, 1903 (Stats. 1903, p. 485), creating the state commission of lunacy and defining its powers; that the repeal of the act of 1897, giving the right of action, operated as an extinguishment of that right, and no law thereafter existed authorizing a judgment to be rendered against defendant; 2. That if this was not the effect of the repeal, nevertheless, the action should have been brought by the trustees of Napa State Hospital and not by the plaintiff as treasurer thereof.

This second point made by appellant is disposed of adversely to him in *Napa* v. *Yuba County,* 138 Cal. 378, [71 Pac. 450], where it is expressly held that such a suit is properly brought by the treasurer of the hospital.

As to the first point, it is equally disposed of adversely to appellant by the statute of 1903 repealing the act of 1897 because that act expressly provides that: "No action or proceeding commenced before this chapter, or any amendments thereto, takes effect, and no rights accrued are affected by its provisions. Any action or proceeding commenced . . . may be maintained and prosecuted to final determination in the manner and form in which the same was brought." As this action was commenced in 1901 and before the repeal of the act of 1897, it comes within the benefit of the reservation in the act of 1903 immediately quoted.

As to the constitutional objections raised to the act of 1897, it is claimed that this act establishing the Napa State Hospital was unconstitutional, as violative of section 1 of article XII of the constitution, declaring that no corporation can be created by special act. This section reads as follows: "Corporations may be formed under general laws, but shall not be created by special act. . . ."

Section 4 of this same article defines the term "corporations" as used in section 1 to be as follows: "The term 'corporations' as used in this article, shall be construed to include all associations and joint-stock companies having any of the powers or privileges as corporations not possessed by individuals or partnerships. . . ."

It is apparent from these sections quoted, considered by themselves and in relation to the entire article XII of the constitution, dealing with corporations, that the corporations thus referred to are private corporations. They have no relation to corporations such as state hospitals for the insane, which are public corporations under the control and government of the state, and created and acting merely as state agencies for the protection of society and the betterment and amelioration of the condition of those citizens of the state who have the misfortune to be insane. These are created to discharge a purely beneficent and governmental function pertaining to the care and treatment of unfortunate members of the community, and exist for governmental purposes solely. They are strictly public institutions, whose maintenance is provided for by legislative appropriations on the part of the state, whose trustees or managers are appointed by the governor, and are in fact public officials whose duties are fixed by express provisions of law, and whose conduct and management is under the exclusive control of the state. They are entirely distinct from either private or municipal corporations; constitute purely public corporations acting as agencies of the state for governmental purposes exclusively. They need not have been created as corporations at all, and their creation as such and endowment with corporate powers was in order that the duties imposed upon the officials thereof and the administration of such institutions might be discharged more conveniently and effectually. So the Napa State Asylum, being a public corporation under the act, created solely as an agency of the state for governmental purposes, the section of the constitution relied on by appellant can have no application to its creation as a corporation.

On the subject of the nature of such corporations, see *White* v. *Alabama Insane Hospital,* 138 Ala. 479, [35 South. 454]; *Maia's Administrator* v. *Directors of Eastern State Hospital,* 97 Va. 507, [34 S. E. 617].

As to the other constitutional objection that the act in ·question is, as to the right to recover from the estates ot insane persons confined in the state hospital, class legislation, because providing a right of action against the estates of ·those confined therein only, and inapplicable to estates of those- not confined therein, it is effectually disposed of in .People ex rel. Moore v. King, 127 Cal. 570, [60 Pac. 35], and in the Estate of Yturburru, 134 Cal. 567, [66 Pac. 729], .and a reference to those cases is all that is necessary to be said on the subject. While other constitutional objections .are also made, we deem them untenable.

The order appealed from is affirmed.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.