[No. 3531. Sept. 19, 1931.]

In re GIBSON.

[4 P. (2d) 643.]

C. M. Botts, of Albuquerque, and E. R. Wright and Carl H. Gilbert, both of Santa Fe, amici curiae.

T. W. Gibson, of Albuquerque, pro se.

OPINION OF THE COURT

SADLER, J.

This is a proceeding under rule 25 of the Supreme Court against T. W. Gibson, hereinafter styled respondent. The rule in question reads as follows:

"Whenever the Board of Commissioners of the State Bar shall cause to be certified, under its seal, to this court, that any member or members of the State Bar has or have failed or refused to pay the license fee imposed by section 10, Chapter 100, Laws 1925, as amended by Section 2, Chapter 113, Laws 1927, the clerk of this court shall issue citation to each such delinquent member requiring him to show cause before this court, within twenty days after service of such citation why he should not be suspended from the right to practice in the courts of this state."

The respondent is a duly licensed and practicing attorney of Albuquerque, N. M., and in the citation served on him is charged with delinquency in the payment of his State Bar dues for the years *1928 and 1929.* He has been ordered to show cause before this court why he should not, on account of such delinquencies, be suspended from the right to practice in the courts of this state. Several similar citations were issued and served on certain other practicing attorneys. Inasmuch as the controlling considerations are the same in each case, the opinion will be written in the above-entitled cause, as the only one in which a brief has been filed, although the points raised in cause No. 3529, In re Neill B. Field, in the return of said respondent to the order to show cause, will be herein adverted to and discussed. Neither briefs nor returns have been filed in any of the other pending cases, except one hereinafter mentioned.

If authority exists to make the order of suspension applied for, it is to be found in the provisions of chapter 100 of the Session Laws of 1925, as amended by chapter 113 of the Session Laws of 1927. This legislation is generally known as the State Bar Act and will be so referred

to herein. We are therefore confronted at the outset with the validity of its material provisions.

The Seventh State Legislature by chapter 100 of Laws of 1925 established a Board of Commissioners of the State Bar consisting of nine members, one to be chosen from each judicial district by the members of the State Bar in the manner prescribed in the act. Various powers and duties are conferred upon the Board of Commissioners in the original and amendatory acts. We think the primary purpose in the legislative mind in establishing the Board of Commissioners of the State Bar is accurately reflected in sections 6 and 7 of chapter 100, Laws of 1925, reading as follows:

"Sec. 6. The Board of Commissioners shall have power to determine and prescribe by rules the qualifications and requirements for admission to the practice of law, including the amount of fee to be charged applicants for admission, and to adopt and enforce rules governing duties and conduct of all persons admitted to practice, and shall investigate and pass upon all complaints concerning the professional conduct of any member of the State Bar. In all cases in which the evidence, in the opinion of a majority of the Board, justifies such a course, they shall have power to take disciplinary action by public or private reprimand, suspension from practice or disbarment, as the case shall in their judgment warrant. The Supreme Court may in any case of suspension or disbarment, review the action of the Board, and may on its own motion, and without the certification of any record, inquire into the merits of and take action upon such case or any case or complaint agreeable to their judgment. The Board shall have the power to make and enforce rules and by-laws not in conflict with the laws of this state concerning the selection and tenure of its officers, and committees, and their powers and duties, and generally for the control and regulation of the Board and of the State Bar. Vacancies in the Board of Commissioners shall be filled by appointment of the President until the next regular election of Commissioners, at which time such vacancy for the unexpired term shall be filled by election in the mode prescribed for the election of members of the Board of Commissioners.

"Sec. 7. With the advice and approval of the Supreme Court, the Board shall have power to constitute and appoint three members of the State Bar as a special committee to examine candidates for admission to the Bar as to their qualifications, and to recommend such as fulfill the same to the Supreme Court for admission to practice under this Act. The approval by the Supreme Court of such recommendations shall entitle such applicants to be enrolled as members of the State Bar and to practice law, upon taking oath to support the Constitution and laws of the United States and the State of New Mexico. Such special committee shall be known as the State Board of Bar Examiners and, until its appointment, its powers and duties shall be exercised

and fulfilled by the present existing Board of Bar Examiners, and, until the adoption of rules prescribing the requirements for admission to the Bar, such requirements shall be as prescribed by the Board of Bar Examiners."

Section 8 of said act, amended by chapter 113, § 1, Laws of 1927, in a respect not here material, prescribed the procedure for hearings before the board.

Section 9 provides:

"The Supreme Court may annul or modify any rule, regulation or by-law adopted by the Board relative to discipline or admission to the Bar."

Section 10 imposed an annual license fee of $5 on every member of the State Bar, except members of the Supreme Court and judges of the district courts, payable on or before the 1st day of March of each year, such fees to be paid into the state treasury by the secretary-treasurer of the board, and to be kept by the state treasurer in a separate fund known as "The State Bar Fund." And such moneys are by said section "reappropriated out of the treasury of the State of New Mexico for the use of the Board of Commissioners of the State Bar, in carrying out the purposes of this Act," etc.

Section 11 of the act provided for an annual meeting of the State Bar "open to all members of the Bar in good standing," in language as follows:

"There shall be an annual meeting presided over by the President of the State Bar, open to all members of the Bar in good standing, and held at such time and place as the Board of Commissioners may designate, for the discussion of the affairs of the Bar and the administration of justice. At noon on the last day of such meeting the annual election shall close and the ballots canvassed and the results announced."

Section 12 constituted practicing law or holding himself out to practice by any one who had not been duly licensed, or whose license to practice had expired, either through disbarment, failure to pay his license fee, or otherwise, an offense under the act punishable by fine not exceeding $500 or imprisonment not exceeding six months, or both.

The Eighth Regular Session of the New Mexico Legislature by chapter 113, Laws of 1927, amended sections 8

and 10 of the original act. The amendment to section 8 merely directed payment of the expense of hearings provided for in the act should be paid from the district court fund of the county where the act complained of took place. The change in section 10 by the amendment authorized the board, upon application, to suspend payment of the dues of any member during illness, absence from the state, or retirement from active practice. There was also added to section 10 as originally enacted the following language, to wit:

"The Board may suspend any member of the Bar from the right to practice in the courts of the state in case of his failure or refusal to pay the license fee as herein provided, and, in such case, shall give notice to such member by mailing the same to his last known post office address, and such action of the Board shall also be certified to the Supreme Court and to all the District Courts of the State by the Secretary-Treasurer of said Board, and any person who shall practice, or attempt to practice law in this state after notice of such suspension shall be guilty of contempt of court."

Legislative acts of the same or similar purport, conferring all or some of the powers under attack in this proceeding on administrative boards designated either as "Board of Commissioners of State Bar" or "Board of Bar Examiners" have been adopted in several of the states. These states in addition to New Mexico, so far as our investigation discloses, are California, Idaho, Nevada, North Dakota, Oklahoma, and Washington. In all of them except North Dakota and Washington, the powers are conferred upon a Board of Commissioners of the State Bar. In the two states last named the powers are conferred upon a Board of Bar Examiners.

The validity and constitutionality of the several acts establishing these boards and defining their powers have been frequently and vigorously assailed. In only two instances coming to our attention have such attacks been sustained, even partially. In Washington it is held that in so far as the act creating the State Board of Bar Examiners attempts to give finality to an order of suspension or disbarment pronounced by the board, it confers judicial functions upon the board contrary to the departmental division of powers contained in the Constitution. The validity of the act is otherwise sustained.

In Idaho the act as originally passed was held invalid as creating a private corporation by special act, an objection met by amendment at a subsequent term of the Legislature. The act as amended was later sustained except as to judicial powers conferred on board in the face of every objection urged against its validity.

A list of the cases dealing with the subject in its various aspects is set out herein as follows: In re Cate (Cal. App.) 270 P. 968; Id. (Cal. App.) 271 P. 356; Id. (Cal. App.) 273 P. 617; Id., 207 Cal. 443, 279 P. 131; State Bar v. Superior Court, 207 Cal. 323, 278 P. 432, 435; In re Shattuck, 208 Cal. 6, 279 P. 998; In re Petersen, 208 Cal. 42, 280 P. 124; Brydonjack v. State Bar, 208 Cal. 439, 281 P. 1018, 66 A. L. R. 1507; Barton v. State Bar, 209 Cal. 677, 289 P. 818; Carpenter v. State Bar (Cal. Sup.) 295 P. 23; Jackson v. Gallet, 39 Idaho, 382, 228 P. 1068; In re Edwards, 45 Idaho 676, 266 P. 665; In re Scott (Nev.) 292 P. 291; State Bar v. McGhee, 148 Okl. 219, 298 P. 580, 585; Kelley v. State Bar, 148 Okl. 282, 298 P. 623; Goer v. Taylor, 51 N. D. 792, 200 N. W. 898; In re Bruen, 102 Wash. 472, 172 P. 1152; McVicar v. State Board of Law Examiners (D. C.) 6 F. (2d) 33.

■ The courts uniformly sustain such legislation as a valid exercise of the police power over an important profession. Lawyers as a class take a large part in the administration of justice. In the active practice of their profession immemorially they have exercised a great and enduring influence upon the business, social and political life of the people. Under express mandate of the Constitution Justices of the Supreme Court, district judges, and the Attorney General must be selected from among the members of the bar. Perhaps no clearer statement of the importance of the legal profession and the desirability of reasonable regulation of its activities is to be found than that made by the Supreme Court of California in State Bar v. Superior Court, supra. The court said:

"It is a matter of public history and general knowledge that the profession and practice of the law embraces in its membership probably the largest, and certainly the most influential, body

of individuals, having a definite and common objective, of any similar professional association of citizens of this or of any other of the commonwealths of our common country. This body of our citizenry known to the laws of this state as 'attorneys and counselors at law' form an integral and indispensable unit in our system of administering justice which has come down to us under the name of Anglo-Saxon jurisprudence, and without the constant presence and contacts of which courts could not function nor the orderly administration of justice go on. Attorneys and counselors at law have long been known as 'officers of the court,' and as such they have for centuries been required to undergo certain courses of preparation and to assume certain solemn obligations relative to their training, character, and conduct as such; and these not only with respect to their relation to the courts, but also with regard to their relation to the public at large. Thus it is that the profession and practice of the law, while in a limited sense a matter of private choice and concern in so far as it relates to its emoluments, is essentially and more largely a matter of public interest and concern, not only from the view point of its relation to the administration of civil and criminal law, but also from that of the contacts of its membership with the constituent membership of society at large, whose interest it is to be safeguarded against the ignorances or evil dispositions of those who may be masquerading beneath the cloak of the legal and supposedly learned and upright profession. It is to be noted also that from the body of the legal profession it is required, by both the Constitution and statutory law of this and most other states, the justices and judges of all courts of record and of certain other subordinate tribunals must be chosen. It is for each and all of these reasons that the membership, character and conduct of those entering and engaging in the legal profession have long been regarded as the proper subject of legislative regulation and control; and it has never heretofore been considered, so far as we have been made aware, that, at least in this commonwealth, the exercise of a reasonable degree of regulation and control over the profession and practice of the law, constituted an intrusion into the domain of our state organization constitutionally assigned to the judicial department thereof. From almost the inception of our state government statutory provision has been made for the admission, disbarment, suspension, or disciplining of members of the legal profession."

The Supreme Court of Nevada gave expression to similar views in a cause entitled In re Scott, 292 P. 291, 295, where it said:

"The petitioner contends generally that the State Bar Act, as a whole, is violative of the fundamental principles of our government in that those engaged in the practice of law are compelled to accept membership in a corporation in order to practice their profession. This contention furnishes the most popular criticism of the members of the profession opposed to the law. As hereinabove stated, the membership, character, and conduct of those entering and engaging in the legal profession has, since the inception of our state government, been regarded as the proper subject of legislative regulation and control; the right to follow any

of the common industrial occupations of life does not extend to the pursuit of professions or vocations of such a nature as to require peculiar skill or supervision for the public welfare. In the adoption and approval of the legislation under review, the Legislature evidently considered that the time had come in the administration of the law that attorneys and counselors at law, who constitute an integral and indispensable unit in the administration of justice, should be organized as a body politic, with delegated police power subject to the control of the Supreme Court and the Legislature for the benefit of the public welfare in a matter of great public concern." ·

And in State Bar v. McGhee, supra, the Supreme Court of Oklahoma said:

"The necessity for regulating the conduct of attorneys is apparent. It has been, throughout the ages, that the lawyers, in a large measure, shape the policies of the people. We, ourselves, are drawn from the ranks of the lawyers; the Legislature, that makes the laws, is composed in a great many cases of lawyers, and it is well that it should be, because, on the action of the lawyer as a member of the community and frequently of the Legislature, there depends the future welfare of the people, and the shaping of policies, that will result in material prosperity, as well as moral growth of the people. It has ever been that the lawyer shaped the policies of the people, and there is nothing in sight that will change that, in all probability. Such being the case, the conduct of the lawyer should be a special object of consideration at the hands of each department of government."

██ One of the first objections urged by respondent is that the Legislature is without power to compel him to become a member of this or any other association; that if it can compel him to become a member of the State Bar, it may compel him to membership in a city or a county bar association. In the last point to his objection he overlooks the fact that the test of reasonableness is applied to every exercise of the police power. Its exercise cannot go beyond enactments or regulations reasonably calculated to prevent the evils provoking the legislation.

But taking this argument as a whole it is grounded upon a false premise. The act in question does not compel membership in any association. While not of any great significance, it is to be observed that the word "association" does not once appear either in the original or the amendatory acts. The Legislature simply seized upon the active list of the State Bar as the body upon which its regulatory measures were designed to act. The respondent's admis-

sion as a duly licensed practitioner of law made him a member of the State Bar.

In what respect and to what extent does the so-called State Bar Act change respondent's status as a voluntary member of the State Bar resulting from his own application for admission to that bar, to one of compulsion? This can best be answered by a few observations on the essential nature of the act. It neither purports nor pretends to operate upon the practicing lawyer of this state as a member of any association. It is his status as a duly licensed member of the State Bar of New Mexico which gives the act operative effect against him.

He is directly affected by its provisions from the moment he seeks admission to the bar, for the Board of Commissioners of the State Bar, subject to the approval of the Supreme Court, prescribe by rules the qualifications and requirements for admission to the bar, and likewise, and subject to approval of the same court, name the Board of Bar Examiners to conduct examinations for such admission. Upon his admission, an attorney finds his professional conduct, by reason of his status as a licensed attorney, as a member of the State Bar we may say, subject to such disciplinary powers of the governing board as have been constitutionally conferred. Thus far there is nothing affecting the attorney except in his capacity as a duly enrolled member of the New Mexico Bar in good standing—not as a member of the New Mexico or any other bar association.

Among the powers conferred on the Board of Commissioners is that of investigating and passing upon "all complaints concerning the professional conduct of any member of the State Bar." Incident to the exercise of this power, the board is authorized to hold hearings, to summon and examine witnesses under oath, and compel their attendance. And finally for the manifest and expressed purpose of raising funds to carry out the purposes of the act, an annual license fee of $5 is laid upon "every member of the State Bar," except such as are Justices of the Supreme Court or judges of the district courts.

This license fee is not imposed upon any one by virtue of or as an incident to membership in any association. It is imposed upon the attorney by virtue of his status as a member of the New Mexico Bar. Here again, as above stated, the act is operating on his individual status as a licensed member of the bar, not as a member of any bar association. And under the terms of the act delinquency in the payment of this fee works no deprivation of membership in any association. It operates after citation and hearing to authorize a suspension of such member from the right to practice in the courts of this state.

In so far as any duties or privileges are created or conferred upon members of the State Bar collectively, they are entirely optional to be availed of or not as the member elects. Every member of the State Bar is privileged to participate by his vote in the selection of the Bar Commissioners, though he cannot be compelled to do so. And the language of section 11 of the act providing for an annual meeting of the members of the State Bar but emphasizes the entire want of compulsion to membership or participation in its deliberations. It reads:

"There shall be an annual meeting presided over by the President of the State Bar, *open to all members of the Bar in good standing,* and held at such time and place as the Board of Commissioners may designate, for the discussion of the affairs of the Bar and the administration of justice."

He who does not desire need not attend. Penalty does not attach for nonattendance. And the only detriment suffered for failing to participate in the annual meetings is the loss of the splendid benefits universally conceded to flow therefrom, through an interchange of ideas, discussions for the common good of the bar, and the reading by eminent members of the profession of carefully prepared papers on subjects of current interest.

The power to impose the annual license fee of $5 is vigorously assailed and as vigorously defended. We agree with counsel serving here as amici curiae by our appointment, that a tax may lawfully be laid upon the occupation of attorney, but not with their suggestion that the $5 license fee in question can be sustained as an excise tax. It must appear that the tax or license is im-

posed for revenue purposes before we are justified in testing its validity as an excise tax. The power to levy such a tax on the occupation of attorney seems to be well settled. Abraham v. City of Roseburg, 55 Ore. 359, 105 P. 401, Ann. Cas. 1912A, 597, and note. Here it is quite apparent, however, that the fee is imposed as a regulatory measure, designed only to raise funds for carrying out the purposes of the act.

We find no difficulty, however, in agreeing that the license fee may be properly sustained as a reasonable regulatory exaction. In North Dakota an act of the Legislature conferred upon the Board of Bar Examiners, in addition to their duty of examining candidates for admission to the bar, power to investigate any charge relative to misconduct by attorneys, for the prosecution of such charges at the suggestion of the Supreme Court, and imposed an annual license fee of $15 upon practitioners at the bar of that state. In Goer v. Taylor, 51 N. D. 792, 200 N. W. 898, 899, where the power to impose this annual fee was drawn in question, the court said:

"In any event, we think it is clear that the Legislature has the right to impose a proper occupational charge. Such charge may be imposed either for the purpose of producing revenue, in which case, as a tax, it is subject to the requirements of section 175 of the Constitution (see State v. Klectzen, 8 N. D. 286, 78 N. W. 984), or as a purely regulatory exaction. If imposed for the latter purpose it is subject only to the requirements that the regulatory provisions be reasonable and that the charge or fee be not to any considerable extent greater in amount than is reasonably necessary to carry out the regulatory provisions. * * * An examination of the provisions of the Bar Board Act discloses beyond any doubt that it is a regulatory act."

In Carpenter v. State Bar, 295 P. 23, the California Supreme Court, under a State Bar Act in many respects similar to our own, entered an order of suspension against a respondent, a practicing attorney, for nonpayment of an annual license fee of $10, thereby sustaining not only the validity of the license fee but the power to suspend for its nonpayment.

The State Bar Act in Oklahoma seems patterned after the California act. The annual license fee is $5 the same as ours. In Kelley v. State Bar, 148 Okl. 282, 298 P.

623, 624, the Supreme Court of that state, answering an attack on the validity of such an imposition, said:

"Another attack is made on the act because, in the attempt at regulation of the officers of the court, and those who are permitted to practice law, a membership fee is required of $5. We see nothing in the Constitution that would prohibit the Legislature, under its constitutional power and duty, from requiring a privileged class, such as licensed attorneys are, to pay a small fee, such as this is, toward the expenses of the regulation of the profession to which they belong."

It is urged that the penalty for nonpayment is so arbitrary, unreasonable, and out of proportion to the delinquency as to deter a lawyer cited from entering into litigation for the protection of his rights, by reason of the consequences to the interests of clients which may be jeopardized in such litigation, and that the enforcement of the penalty provision denies to respondents the equal protection of the laws and is a deprivation of property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and of section 18 of artcle 2 of the Constitution of the State of New Mexico. But if the power to impose the fee be conceded, of which we think there can be no doubt, then a penalty designed solely to enforce its payment, and which may be avoided altogether by payment, should not be held void as arbitrary or unreasonable.

The argument is advanced that the act violates section 1 of article 3 of the State Constitution making a departmental division of powers into legislative, executive, and judicial, and providing that

"no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others," etc.

This is one of the most serious attacks that has been made on the State Bar Act, and it has been made in every state where such an act has been adopted. In Washington, in the case In re Bruen, 102 Wash. 472, 172 P. 1152, the Supreme Court of that state dealt with this objection. It was held that in so far as said act purported to confer on the board the power to disbar it was unconstitutional. The court held further, however, that inasmuch as under its inherent powers it had exclusive

jurisdiction to make orders of disbarment, the report and findings of the board, when filed with it, would be accepted as a basis for an examination and review by it, thus sustaining the act except in the respect mentioned.

This court, in the case In re Royall, 33 N. M. 386, 268 P. 570, 63 A. L. R. 237, in citing the Bruen Case, said:

"It is not seriously contended by counsel for the board that the board can be lawfully empowered to make the order of disbarment. That this must be so seems clear, when we remember that the disbarring of an attorney is a strictly judicial function with which the board may not be clothed. State ex rel. Wood v. Raynolds, 22 N. M. 1, 158 P. 413. See, also, In re Bruen, 102 Wash. 472, 172 P. 1152."

Our holding in the Royall Case discharging the alleged contemner was based fundamentally upon the ground that the order of disbarment made by the Board of Bar Commissioners, although pursuant to authority, purportedly conferred by the act in question, was void as the attempted exercise of a judicial function in violation of section 1 of article 3 of the Constitution.

In the California cases, and likewise in the Oklahoma and Nevada cases (the State Bar Acts in the two last-named states being modeled after the California act), it is held the legislation does not confer judicial power on the governing boards. In re Shattuck, 208 Cal. 6, 279 P. 998; In re Scott (Nev.) 292 P. 291; State Bar v. Mc-Ghee, 148 Okl. 219, 298 P. 580. This conclusion is reached, as will be disclosed by an examination of the cases just cited, by reason of the presence in the statutes of those states of certain provisions absent in ours. These provisions are requirements: (1) For the immediate filing in the Supreme Court of a certified copy of any record in suspension or disbarment; (2) for the making by the Supreme Court of *its order* striking from its roll the name of any attorney disbarred, or suspending him as the case may be, provided no petition for review has been filed with it within sixty days after the board's order; and (3) providing that nothing in such act contained shall be construed as limiting or altering the powers of the courts of such state to disbar or discipline members of the bar as such power then existed.

But we do not find those provisions in our statute, absent which the conclusion is inescapable that the legislation does attempt to confer the judicial power of suspension and disbarment on the Board of Commissioners and to that extent violates section 1 of article 3 of the Constitution.

Since the board cannot visit upon respondents the penalty of suspension for nonpayment of the annual license fee of $5, the question next arises whether this court is authorized by the act, or in the exercise of its inherent powers, so to do. This brings us to a consideration of other provisions of the statute.

A portion of section 6 of the original act reads as follows:

"The Supreme Court may in any case of suspension or disbarment, review the action of the Board, *and may on its own motion, and without the certification of any record, inquire into the merits of and take action upon such case or any case or complaint agreeable to their judgment.*"

What is the effect of the foregoing provision?. It may be suggested that it is intended as a disclaimer of intention on the part of the Legislature to deprive the Supreme Court of any of its inherent powers in reference to suspension or disbarment. Perhaps it can be so explained. But to our minds it is something more. It is a legislative declaration that this court shall be invested with full, complete, and plenary power in all cases involving either suspension or disbarment. Quite apart from the exercise by this court of its inherent powers in such matters, and looking solely to the language of the act quoted above as the measure of its authority, can it be doubted that this court has power to visit any penalty or enforce any punishment by way of discipline which the board actually or pretendedly is given authority to impose?

It is to be observed that the amendatory act giving the board power to suspend for nonpayment of the license fee is not mandatory. It says the board "may suspend." Ignoring for the moment the constitutional objection to suspension and disbarment by the board, let us suppose a case before it of suspension for nonpayment of license

fee, in which after hearing it declines to suspend, or of disbarment in which after hearing it declines to disbar. We do not think it is open to serious question that under the express language of section 6, just quoted, this court would be empowered to take the action by suspension or disbarment which the facts warrant, and which the board, had it possessed the power, should have taken.

If then the board is without power to make orders of suspension and disbarment, what function is it to perform? And does the invalidity of that portion of the act attempting to confer power on the board to suspend or disbar, invalidate the act as a whole? A mere reading of the statute demonstrates that the board has many important functions to perform aside from the power of suspension and disbarment. Its power with reference to prescribing qualifications and requirements for admission to the bar, to adopt rules governing conduct of all persons admitted to practice, and to investigate and pass upon all complaints concerning the professional conduct of any member of the State Bar, each and all are of the very highest importance and constitute the board a valuable aid and arm of this court in reference to such matters. For us to hold that the Legislature would not have enacted the valid without the invalid portion would be to infer a legislative intent to leave unenacted legislation of the most wholesome character, because a particular portion, not really essential to conferring all the benefits contemplated by the act, could not lawfully be made a part thereof. We are unwilling to attribute such petulance to a co-ordinate branch of the government. We, therefore, hold that in so far as this objection is concerned, the valid may be segregated from the invalid portion of the act and the valid portions thus sustained.

Under this holding the board may still perform many important functions and duties which fall short of the power to suspend or disbar. As applied to complaints involving charges of professional misconduct, the board still may investigate, conduct hearings, and make findings and recommendations to this court. Its action is to be deemed recommendatory in character with plenary

power in this court to examine the entire case anew and render judgment as the facts may warrant. Such has been the effect attributed to the acts of the board in like cases under similar statutes. In re Shattuck, 208 Cal. 6, 279 P. 998; In re Scott (Nev.) 292 P. 291; State Bar v. McGhee, 148 Okl. 219, 298 P. 580; In re Bruen, 102 Wash. 472, 172 P. 1152, 1155; In re Olson, 116 Wash. 186, 198 P. 742.

This court by the adoption of rules 24 and 25 already has approved tentatively, at least, the holdings of the various state courts in the cases last above cited, on the effect to be given the action of the governing board of the State Bar, as of a recommendatory character. Rule 24 constitutes the members of the Board of Commissioners of the State Bar standing referees of this court, authorizing them when sitting as a board and by a majority rule to hear complaints against members of the bar for unprofessional conduct, and after trial before such board where warranted, to make findings of fact, conclusions of law, and recommendations to this court for its action. And after mature consideration following extended research we are convinced of the soundness of the decisions which have thus defined the separate functions of the courts and governing boards under similar statutes.

The objection that the legislation is in conflict with section 1 of article 6 of the Constitution, in that it attempts to create an inferior tribunal with judicial powers, is disposed of by what has been said hereinabove. In so far as the act attempts to do so it is void. But this does not void the remaining valid portions of the act.

"The Legislature provided an intermediary agency, whereby the power of the court could be more generally and efficiently exercised. To that extent the legislation was warranted and valuable. The invalid portion is manifestly separable from the valid portions of the act, which may therefore be sustained." In re Bruen, supra.

We do not understand respondents to contend that the mere power to hold hearings and report facts and conclusions to the court is a judicial act. That it is not is well settled. Shoultz v. McPheeters, 79 Ind. 378.

Nor are we able to see wherein the act violates section 24 of article 4 of the Constitution. It is asserted without argument that this is a special law such as prohibited by that section and provides for special taxation and attempts to relinquish indebtedness created by the act in favor of certain persons. The act bears no earmarks of special legislation. It operates alike on all within the classification adopted and the classification is based upon a reasonable distinction. We already have held the license fee imposed is not a tax but a regulatory exaction, designed solely to raise funds for accomplishing the purposes of the act. Hence it is free from the objection that it is special taxation. No indebtedness to the state or to any municipality, created by such legislation, is relinquished unto any one. The act plainly specifies that the funds realized from the license fee are to be devoted to the expense of carrying out the regulatory provisions of the law.

The legislation is attacked as being in conflict with section 26 of article 4 of the Constitution, in that it seeks to grant special rights, franchises, privileges, immunities, and exemptions forbidden by such section. We are unable to see wherein it is subject to this criticism. And respondents do not disclose how they are injured or adversely affected by this asserted violation of the Constitution. In the absence of such showing, they are not in position to invoke a ruling of this court on the point suggested. Asplund v. Alarid, 29 N. M. 129, 219 P. 786. See, also, Shea v. North-Butte Min. Co., 55 Mont. 522, 179 P. 499. The Supreme Court of California has held, however, that a corresponding provision in the Constitution of that state is not violated by a State Bar Act very similar to our own. State Bar v. Superior Court, 207 Cal. 323, 278 P. 432, 435.

Other objections on constitutional grounds are urged. The act is claimed to violate section 31 of article 4, in that it attempts to appropriate public moneys to a corporation, association, or institution not under the absolute control of the state; and that it violates section 14 of article 9, in that it attemps to make a donation to,

or in aid of, an association or public or private corporation. Unfortunately, we are not favored with a brief in support of the numerous constitutional objections interposed. They are merely set forth as bare objections in a return to the order to show cause.

We are unable to find merit in the contention that the legislation violates either of the constitutional provisions mentioned. The power of the state over the Board of Commissioners of the State Bar appears to be absolute. We already have shown to what extent, under the very terms of the legislation, the acts of the board are subject to the supervisory control of the Supreme Court, the head of the judicial department of the state. In so far as the continued life and activities of the board may depend on favorable legislative or executive action in the future, the power of those co-ordinate departments of the state government seems nothing short of absolute.

Nor do we think the use for regulatory purposes of funds raised in the form of an annual license fee from the members of the particular profession being regulated constitutes such an appropriation of public moneys, or such a donation to a corporation, association, or institution as either of the two constitutional provisions in question were designed to prevent. The opinion in Harrington v. Atteberry, 21 N. M. 50, 153 P. 1041, 1050, in connection with its review of the authorities dealing with similar constitutional provisions, contains comments suggestive of the evils at which these provisions were aimed.

One of the respondents asserts that, if it is held the legislation does not create a corporation, but that it does create a tribunal inferior to the district court which lacks corporate character, then the entire legislation is void because such tribunal is attempted to be clothed with legislative, judicial, and executive powers in contravention of section 1 of article 3 of the Constitution. We have ruled on this objection in so far as the act attempts to confer on the board power to perform the judicial act of ordering suspension or disbarment.

In State Bar v. McGhee, supra, the Oklahoma Supreme Court, adverting to the departmental division of powers, says:

"In practical operation, however, the line of division of duty cannot be exact. The duty of each shades into the duty of the others, and altogether the three divisions of government are but constituent parts of the whole."

The court then calls attention to the significance to be attached to the use of the qualifying word "properly" before the word "belonging" in prohibiting any person or collection of persons charged with the exercise of powers *properly* belonging to one of the departments from exercising any of the powers *properly* belonging to either of the others, and said:

"We are not at liberty, in construing a constitutional provision, to disregard its language. The presumption is that the makers of the Constitution meant something when they put in the qualifying word 'properly' before the word 'belonging,' and it means more than if the general language had been used prohibiting one department from exercising the powers belonging to either of the other departments. The makers of the Constitution recognized the difficulty in separating by hard and fast rule, the functions of the three branches of government."

The identical language occurs in the corresponding provision of our state Constitution. Hence, the analysis of such language in the foregoing opinion in arriving at the true intent of the framers of the Constitution is persuasive. We hold there is no such union of legislative, executive, and judicial powers in the board as to violate this provision of the Constitution. See, also, In re Edwards, supra.

We have carefully considered the contention that the statute violates section 13 of article 11 of the Constitution, commanding the Legislature to provide for the organization of corporations by general law. The inherent public character of the Board of Commissioners of the State Bar relieves the statute of this objection. The board is a governmental agency, and its creation, whether or not it shall be called a corporation, does not violate this constitutional provision. In creating and establishing governmental agencies, the Legislature frequently has given them corporate capacity. The Regents of the Uni-

versity of New Mexico are so constituted. Section 130-904, Comp. 1929. Likewise the directors of the Insane Asylum of New Mexico, section 130-303, Comp. 1929; Regents of the New Mexico School of Mines, section 130-1102, Comp. 1929; and the Trustees of the New Mexico Asylum for the Deaf and Dumb, of the New Mexico Reform School, of the New Mexico Institute for the Blind, and of the Miner's Hospital of New Mexico, section 130-606. The New Mexico State Board of Dental Examiners is created with power to sue and be sued, to have a seal and domicile, to adopt by-laws for its own government, etc., but without a declaration that it shall be a body corporate.

Perhaps more often than otherwise, the Legislature has created such boards without attempting to give them corporate character, instances of which are the creation of the state highway commission, section 64-301, Comp. 1929, held in Looney v. Stryker, 31 N. M. 557, 249 P. 112, 50 A. L. R. 1404, a mere governmental agency; the state board of medical examiners, state board of education, and numerous others. The functions of these boards are substantially the same, whether incorporated or not. And where incorporated, as observed by the court in Napa State Hospital v. Dasso, 153 Cal. 698, 96 P. 355, 357, 18 L. R. A. (N. S.) 643, 15 Ann. Cas. 910, where it said:

"They need not have been created as corporations at all, and their creation as such, and endowment with corporate powers, was in order that the duties imposed upon the official thereof and the administration of such institutions might be discharged more conveniently and effectually. So the Napa State Asylum, being a public corporation under the act, created solely as an agency of the state for governmental purposes, the section of the Constitution relied on by appellant can have no application to its creation as a corporation."

So in Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, 562, referring to an insurance association created in connection with the Employers' Liability Act, the court said:

"The association is very clearly only an agency for the proper administration of this law. It has no functions or powers which it may exercise for any other purpose. It is denominated in the Act as a corporation, but that may be regarded as a term of

convenience. Calling it a corporation does not make it a private corporation. Its character is to be determined by what it is, and not by its name. Railway v. Board of Directors, 103 Ark. 127, 145 S. W. 892; Beach v. Leahy, 11 Kan. 23."

In State ex rel. Board of Com'rs of State Bar v. Kiker, District Judge, 33 N. M. 6, 261 P. 816, 817, we held the Board of Commissioners of the State Bar to be a "tribunal inferior to the district courts," to which the writ of certiorari would lie. While we do not consider such holding as necessarily precluding a corporate status, nevertheless it argues against it. And considering the frequency with which various administrative boards are declared bodies corporate where it is the legislative will they shall be such, the failure so to declare in this case is entitled to some weight. We hold, therefore, that the Board of Commissioners of the State Bar is a mere governmental agency without corporate status created for the regulation of the bar of this state.

 Respondents further contend that to apply the penalty of suspension imposed by section 2 of chapter 113, Laws of 1927, to delinquencies for 1925, 1926, and 1927, would be to render such act obnoxious to the provisions of the federal and state Constitutions prohibiting the passage of ex post facto laws. Chapter 100, Laws of 1925, while providing for the annual license fee, does not unequivocally impose a penalty for its nonpayment. Section 12 of the original act in providing punishment for any person practicing without a license, or whose license to practice shall have expired, "either by disbarment, failure to pay his license fee, or otherwise," uses language which presupposes suspension as a penalty for non-payment. The fact remains, however, that the statute had not in any of its preceding sections so enacted.

This omission in the original act was remedied by the amendment of 1927. The amendment does not purport to operate retrospectively. And respondents say that to have it do so by our decision on this point not only would violate ordinary rules of statutory construction, but would bring it in conflict with section 19 of article 2 of the state Constitution and section 10 of article 1 of the federal Constitution, prohibiting the Legislature from enacting

ex post facto laws, bills of attainder, etc. They may be correct in this contention. Cummings v. Missouri, 4 Wall. 277, 18 L. Ed, 356; Ex parte Garland, 4 Wall. 333, 18 L. Ed. 366; State v. Fourchy, 106 La. 743, 31 So. 325.

But the point we do not decide, nor whether authority exists under the original act to suspend for delinquency in payment of the fees. There is sufficient confusion on the subject to warrant our action in declining to suspend for delinquencies occurring prior to the amendment of 1927, even though we felt our power to do so unquestioned. Hence, suspension will not be enforced for nonpayment of license fees for 1925, 1926, and 1927.

Whether section 30 of article 4 of the Constitution is violated by the purported reappropriation out of the state treasury for the benefit of the Board of Commissioners of the State Bar of the funds arising from the collection of these annual license fees is a matter we need not determine. This provision of the Constitution requires each appropriation bill to distinctly specify the sum appropriated. The test of the power to impose and collect said fees is not affected by the appropriation clause contained in the statute. The respondents do not show themselves injuriously affected by this portion of the act, and they cannot question its validity on this ground: Asplund v. Alarid, supra; Goer v. Taylor, supra. See, also, Clark v. Poor, 274 U. S. 554, 47. S. Ct. 702, 71 L. Ed. 1199. It may be said in passing that counsel briefing as amici curiae seem to concede that periodic appropriation bills will be required for the disposition of these funds.

In closing this opinion we desire to express to Messrs. C. M. Botts, E. R. Wright, and Carl H. Gilbert, members of the bar of this court, our thanks and appreciation for the frank and creditable manner in which they, as amici curiae under appointment by the court, have briefed the various questions involved herein. No attorney appeared for the Board of Commissioners of the State Bar, and but for the helpful services rendered without compensation by these gentlemen, the time of the court given to research and investigation, necessarily extended in a

case involving questions so important and numerous, would have been increased materially.

We desire to add also that the respondents in bringing these questions to issue, and in resisting what they have deemed invasions of constitutional guaranties, are to be commended. In so doing they have rendered a distinct public service. The good faith of their contentions has never been questioned. They are respected and honored members of the bar of this state. That their position on some of the questions has support is shown by vigorous dissenting opinions in two states at least, Oklahoma and Idaho. But the weight of authority and, as we think, of reason and principle, support the positions we have taken.

It will therefore be the order of the court that the penalty of suspension shall not be imposed for the delinquency of any person in the payment of the annual license fee for 1927 or prior years. As to all other delinquencies existing at the time of issuing and serving citations in the various cases, an order in each case, except the one hereinafter mentioned, will be entered granting each respondent thirty days from date of mailing to him of copy of such order and a copy of this opinion within which to pay such delinquency or delinquencies, and providing for the entry of a further order suspending him from the right to practice in the courts of this state if payment thereof be not made before the expiration of said period of thirty days.

In the case of Linus L. Shields, cause No. 3546, the rule against the respondent will be discharged; he not having been engaged in the active practice for the years during which the delinquencies accrued.

It is so ordered.

BICKLEY, C. J., and WATSON, PARKER and HUDSPETH, JJ., concur.